Delta Charter School is a type 2 public charter school established by a contract between the Delta Charter Group and the Louisiana Board of Elementary and Secondary Education. It is accountable to the Louisiana Department of Education and in essence is a standalone single-site school district. Students from throughout the state of Louisiana are allowed to attend and there are no requirements for admission other than being a resident of the state of Louisiana. Delta? Pardon me? No, Your Honor. The only requirement is that a child be of the appropriate age for that grade level. There's no consideration of testing or prior? No, Your Honor. Not at this school. There are some charter schools in the state of Louisiana that are allowed to have admission criteria such as those, but there are no such criteria in our charter contract. Delta is here today because there is a Louisiana state statute, Revised Statute 173991C, that states charter schools must comply with any desegregation order in effect for the city or parish school system. In the context of other charter schools, such as charter schools created directly by a school district rather than the state or charter schools that are takeovers of a particular state, a particular district-run school, then clearly those charters would have to abide by that desegregation order. However, for a Type 2 charter school, because they are unaffiliated with any district or current school system that's under a desegregation plan, there's some ambiguity as to whether that is a requirement for Type 2 charters or whether there's any particular desegregation order that the charter would have to answer for. Instead of getting into whether there's ambiguity in State Law 3991, because I have difficulty understanding how before us you would be asking to attack an order you sought to enter and that Louisiana law appears to require, could we just start factually? Where in your brief do you say there was any clear error as to the district court's reliance on racial demographic information from the 3-day hearing? I'm not certain that that was fully addressed. I know that there was the — What part of the brief addresses it? That would be in the section discussing — Part 2. Exactly. Yes, Your Honor. It starts at page 19. How many record sites did you include to show any clear error in the district court's violations findings? I saw only one. That is correct, Your Honor. One record site. So your position isn't that the district court committed clear error when it found you'd violated the terms of the order? I would say that, stepping back, my initial position is that our intervention in the case in the very first place is where the problem lies. Okay. And I know we can get to that, but I just want to establish, if all we're looking at is the contract you entered into and then the district court, whether it committed clear error finding that you violated the terms of that contract or abused its discretion in its remedial orders, is it correct that the brief you've given to us has just one record site about your recruitment? That is correct. There is only — So you don't dispute the district court's finding of deliberate noncompliance or the district court's finding of no good faith? You made no effort to in the brief? I did not address that in the brief. In the brief. My issue is, Your Honor, why — You didn't move to set aside the consent decree. Pardon me? You moved to set aside the consent decree. Is that right? I'm sorry, to modify. That is correct. We did make that motion in the trial court. As I read the last page of the order that you're appealing from, that motion was denied. I believe that is correct. And that's part of your NOA? Yes. Did you cross-appeal that tonight? That was not specifically cited in this. So that's not before us? Correct. That's part of your NOA? Pardon me? I understand your notice of appeal appeals from two orders, including document 173? Yes. 173 is what denies your motion? That's correct. There's the initial order and then the memorandum ruling. What part of the brief makes any argument that the denial of the motion for — of that motion was reversible error? That is not addressed in this brief. Do you make any argument that the exclusion of your expert? We did not address that in the brief, either. Okay. The issues that we focused on are whether Delta Charter School should have been required to intervene in this case in the first place. Delta Charter School had no connection whatsoever to Concordia Parish School Board. It was not in existence for the first 45 years of this case. It has not suffered any sort of injury as a result of the prior unconstitutional conduct of the Concordia Parish School Board. Why not consent decree? Yes. The Delta Charter School was in a position where the Louisiana State Department of Education stated that in order to receive funding, we had to get court approval. Have you filed anything to try to ameliorate the requirements or to get out of the consent decree to have it nullified in your situation? Yes. There was a motion for relief that was filed, which — Filed with the state or the school board? The motion for relief was filed in the present case. The — RBA? Correct. You didn't go through any legalistic hoops to try to get the consent decree nullified? No. It came through the state? Not in state court, no. Is that something you can do? I'm not certain that we would be able to have the consent order nullified in a state court for the federal consent order. That's an issue that I — Signed on to it through the state, right? Well, we signed on to it in the federal litigation. And the state Department of Education said, yes, you — once you've signed on to that, we say that you can have funding and you can operate your school. Did the Department of Education let you out of it? I — You can recruit from anywhere in the state, but that's not really happening now. I suppose if this school simply moved across the parish line, it may not be subject to this particular discrimination — or this particular desegregation litigation. It may then be subject to other desegregation litigation, or it could move to a parish where there is no current desegregation litigation. You sought to intervene in order to open your school. That's correct. Senior Judge Jarrell allowed you to. That's correct. Do you dispute any of the factual quotes from the federal government's brief, that not only that, but thereafter, repeatedly, you said, we respect that we're bound by this consent decree? We certainly do respect that we are bound by the consent decree. Oh, you do? We agree that we are bound by — We always have. Their quotes, to that extent, are accurate. To the extent that we must subject ourselves to this litigation, as long as there is an active consent order, then certainly I would agree that as long as it remains in effect, we must comply with it. Then the issue before us again is, did the district court clearly err finding that you violated it, but you make no showing of that? I would say that the issue gets back to a more basic level, whether there was standing in jurisdiction for Delta to intervene in this litigation. When — where in the record, with a record site, did you ever tell Judge Jarrell that you lacked standing to do what you sought to intervene into? There is one site in the record that was noted in the reply brief where the similar arguments were raised. I'm not certain that they were raised with great specificity. At the same time, I would state that standing and jurisdiction is an issue that can and should be raised at any time, including — That's the issue that was given supplemental briefing in the Banks case before our court today, right? That was in the supplemental brief, yes, Your Honor. And in a roundabout way, that is correct, yes. So what's your position? If you aren't judicially estopped, if it does go to standing, therefore jurisdiction, if we must consider it, what's your position as to our case's interrelationship with the Banks decision? I would state that, similarly, that is a case involving a party that was required What are you asking us to do, to wait, hold our case in abeyance if we think it is implicated? I would state that I — certainly, I think there should be similar and agreeing opinions in the two matters. Is there anything pending in the Louisiana Supreme Court that's relevant to this issue, even if it's an issue that's been preserved? Not to this particular issue. There was one case that is cited in certainly the district court opinion and in the appellate briefs regarding a lawsuit concerning funding for Type 2 charter schools. That lawsuit has since been resolved. Millikin isn't a standing case, is it? It has been supplemented from additional cases. Is Millikin itself a standing case? It is with some distinction. Do you have a record cite for whether you raised Millikin ever to the district judge? I know that in the motion for relief, Jenkins, which was a following case, was cited in particular and that — let's see — I'm not certain that in that particular brief, Millikin itself was cited. As I understand your motion for relief from the consent decree, you're basically challenging the racial balancing provisions and saying it violates parents' evolved. That's correct. Was there ever a finding that Delta is discriminatory? No finding that it is discriminatory. Simply a finding that it has failed to attain the demographic numbers required by the consent order. Right. I understand. But in terms of a history of discriminatory intent, obviously you've got Concordia having been found as such back in the 60s. But in terms of today, Delta being open in 2012, any judicial finding? No, Your Honor. No. No. So Delta has never been found to have violated any constitutional provisions concerning discrimination. Is it your position that a lack of school-provided transportation affects your ability to meet these quotas? I would state that providing transportation is something that could assist in reaching these numbers. That is certainly speculation at this point. Do you have any information that there are students throughout the state who would be happy if transportation was provided? Or are they perfectly happy where they are? I would simply be speculating if I tried to give any hard numbers on that. I can't state that as of May 2017, 20% of the students were residing outside of the district boundaries. Okay. In addition to the standing questions, again, the consent order itself is an inter-district remedy. And inter-district remedies are severely limited by precedent. In order to have an inter-district remedy, there needs to be some finding that the party that — whose actions are being limited by the order has acted in an unconstitutional manner. Fifth Circuit has also issued — This is saying that the district court's remedial order was an inter-district remedy. This is your argument? That's your argument? That and the consent — Violative of Milliken. Pardon me? Violative of the Milliken decision? Yes, Your Honor. Where did — but again, that — if that's not somehow a standing argument, that's an argument you didn't preserve to present to us. That is not in the trial court record. But is it even in your principal brief? Yes, Your Honor. There is a lengthy discussion about inter-district remedies in the principal brief. But how — why wouldn't that be waived if that's — if that goes to remedial authority and you didn't oppose the district court's remedial authority below? Well, I would state, number one, it's a pure question of law as to whether something is or is not an inter-district remedy. There's — on the record, there are two districts, independent districts. Well, that's — well, that's based on your statement. I don't think you have any supporting Louisiana law that when a type 2 independent public school itself becomes — the school becomes a district. That's your proposition. That is correct. You made that proposition in the principal brief. You didn't have supporting authority. What's your authority under Louisiana law that every charter school itself is a district, even geographically, if it's within a district? I know that's an argument, but do you have any authority for that? Certainly, yes. Throughout Bessie Bulletin 126, that would be 28 administrative code. And I would have to get — Do you have any case authority saying that charter schools are the functional equivalent of school districts, each charter school is its own school district? That would be in the recent Louisiana Supreme Court case on the matter. That decision came out in March of this year. Is that in your brief? No, Your Honor. That decision was released after a briefing had been completed. Wouldn't that be where there's only one charter school in the district? Pardon me? Wouldn't that only be where — if there was one charter school in the district, so you would say the charter school is the district school? There are multiple charter schools. Correct. So for type 2 charter schools, type 2 charter schools are considered LEAs, or local education agencies, under state law. The other types of charter schools authorized directly by school districts are not considered their own LEAs. So, for example, a type 1 or type 3 charter school created by a city or parish school district is not a stand-alone district. It's a piece, part and piece of that overlapping district. A type 2 charter school is wholly independent. It does not have any connection with any other school districts within the state, and it answers directly to BSEE and the Louisiana Department of Education, just as any other city or parish school system does. I may be misunderstanding your argument, so tell me if this isn't your argument. But as a party to a consent decree, therefore bound by the terms, would a district court, in order to conclude you violated the terms, also have to find that you separately violated either state law or constitutional law? If so, what's your case? No. The court would simply need to find that the consent order itself had been violated. Our challenge, however, is on the validity of the consent order based upon standing and jurisdictional questions and upon whether that consent order constitutes an improper inter-district remedy. I would also, again, on the standing point, note that Delta had no interest in joining this case. They were simply compelled to do so by the Louisiana Department of Education. They suffered no injury as a result of the school district's actions. There was no relief that they were seeking. They were simply seeking an opinion stating . . . Delta sought to open a school. That's a pretty high interest. That's an interest, Your Honor, but it bore no connection on the behavior that the lower court litigation was seeking to correct. Delta found itself in a position where it intervened ostensibly to rectify an injury and assert its interest and simply suffered punishments as a result of that. I believe I'm out of time, Your Honor. Thank you. Good morning, Your Honors. My name is John Blanchard on behalf of the Concordia Parish School Board, and may it please the Court. The crux of this appeal is that before the ink was even dry on the consent order, Delta Charter School was violating it, and I'm more than prepared to discuss the multiple violations of the consent order, but my friend, Mr. Higgins, seems to have consented that they're not challenging the district court's finding that they violated the consent order in multiple ways, and they're not challenging that he didn't commit clear error in so finding. While Mr. Higgins' brief didn't directly address the standing issue until his reply brief, we're more than capable of discussing the standing issue today, and to that effect . . . Let me get there, though. Yes, Your Honor. On the specific questions of whether there's evidence to support the violations and then the remedial authority. The remedial authority, as I understand it, Judge Drell, extended his ruling to require a consultation with school boards subject to separate desegregation orders. Yes, Your Honor. And I tried to look at your brief and the federal government's brief, and I didn't see authority that would support that. Well, that is actually a res nova issue before this court. Charter school, other than the St. James case and this case, both are pending before this court. No appellate court has ever dealt with the issue of charter schools in a desegregation case. What Judge Drell recognized in his remedial order is that he imposed three limitations. First, the 350-student enrollment limitation from Concordia, which is actually 50 students more than the maximum in the consent order. Second, they could enroll any student from any parish not under a desegregation order, so they could have as many students from any other parish that they wanted. And the third measure in that they had to basically ask permission to enroll students who are coming from a parish with ongoing desegregation obligations. We submit that Judge Drell recognized the complicated issue with a charter school that can enroll students from any other parish. For example, Catahoula Parish, which is neighboring to Concordia Parish, Delta enrolls approximately about 90 students from that parish while they have ongoing obligations. All Judge Drell said was, come ask permission, and we'll have a contradictory hearing with that school board. What's the authority to require them to ask permission? Is that in the consent decree? That is not in the consent decree, Your Honor. That was a remedial measure Judge Drell imposed after the hearing in the matter. Is that a cap? Is that temporary? I don't believe the cap is temporary according to his order. What Judge Drell, what he stated in his holding was that these remedial measures were designed to see if Delta Charter School could ever come into compliance with this consent order because they were rapidly advancing their own agenda while only winking at the consent order. Do you acknowledge that the consent order requires essentially a racial match, racial balancing with the demographics? Yes. One of the requirements of the consent order is that the charter school reflect the racial demographics of the school board, which are approximately 50-50, within plus or minus 10 percent. And that's a remedial measure that has been implemented in numerous desegregation cases ranging anywhere from 10 percent to 20 percent. The Supreme Court dealt with such a provision in Parents Involved. I take it that you disagree that Parents Involved applies to this case, and we could talk about that. But if Parents Involved were to apply, do you agree that this is the kind of provision that Parents Involved struck down? I would disagree that this is the type of provision that Parents Involved struck down because Parents Involved was a post-desegregation case. That involved one school district that was your ---- I understand. I want to get to that. Yes, sir. If Parents Involved were to be ---- were to apply, let's say there were no desegregation order in this case, would you agree that this provision would not be allowed under Parents Involved? It would be subject to strict scrutiny under Parents Involved if there was no desegregation case, yes, Your Honor. I heard opposing counsel say that there's never been a finding of discrimination against Delta. Is that ---- do you agree with that, or do you ---- Against Delta specifically, there's been no finding. But I would say that in the history of this case, Delta is on the site of the former Huntington Academy, which the district court recognized in 1970 as a private segregationist academy. That school closed around 2011 primarily because of financial concerns. And several of their alumni, including Mr. Craig Jackson, who was the founder of Delta Charter School, at the time of the hearing he was their vice president and spokesperson, they decided to start a charter school on the same grounds of the Huntington Academy. So there is a perception in the community and concerns throughout this case that Delta is discriminatory. I acknowledge all those facts. But given the constitutional issues in Parents Involved, why not seek a judicial finding that Delta is discriminatory before ---- I would submit, Your Honor, that because this is an ongoing desegregation case, the State sought to approve a new public school within Concordia Parish. And this does tend to go to the standing issue that Mr. Higgins raised, but throughout this Court's history, dealing with splinter district cases, for example, recently the en banc court in 1999 dealt with a splinter district issue in the Rapides Parish case, where splinter districts, when the State tries to carve up a school district undergoing desegregation, those new school districts have a heavy burden to show that they don't have a deleterious effect on the desegregation efforts of the parent school. And we would submit that a similar standard should be applicable to charter schools. This issue wasn't quite squarely addressed in this case, but it is pending in the St. James case as to the standards dealing with opening a charter school. And we also represent the St. James Parish School Board. One of the standards that we are asking the Court to adopt in that case is to ask the question, what negative effects would the charter school have on ongoing desegregation efforts? Just to be clear, just in terms of the precedents you're citing, this case does sound different in that this is not the school district generating the new school. This is, in fact, a new school existing in opposition to the school board. Do I understand that correctly? Yes, Your Honor. It is a new school district operating under the auspices of the Board of Elementary and Secondary Education. The school district had opposed, or the local authorities had opposed the charter school. So, when they went to the Board to try to open what's known as a Type I charter school, which would be supervised by the Board, the Board rejected it. So, they went to Bessie and Bessie approved it. When you say it, a school district? I'm sorry, Bessie approved the opening. A charter school? Yes, Your Honor. Is that the legal equivalent of a district? The Louisiana Supreme Court recently, in the Iberville Parish case, had found that Type II charter schools are public schools entitled to public funding. I don't believe that that stood quite for the premise that it's its own independent school district, but it is its own independent school that's operating within the boundary. You say St. James. Is that Banks? Is that what I'm thinking? Yes, Your Honor. That's Banks v. St. James. Yes, Your Honor. And it has all been briefed in that case? Yes, Your Honor, it does. And we would submit that we are more than willing to offer this Court supplemental briefing on the standing issue as well, if the Court would To address your issue, Judge Howe, about if there needs to be a finding about discrimination for Delta, the Supreme Court, as early as 1964 in the Griffin v. The School Board of Prince Edward County case, state officials can't take any action to impede the desegregation efforts of local school boards, and they have stopped the attempts of school boards to shut down local school boards and fund only private schools. But this is not Concordia, you know, colluding with a new entity to try to undermine. This is Concordia, if I understand, you're opposed to Delta. Yes, Your Honor. Well, we're not opposed to the principals This is not your puppet that's doing this. Well, the school board's not opposed to charter schools and principal. If the school board had wanted to open Delta Charter School, at the time of its opening, Delta Charter School was about 85 percent white, about a mile and a half from Faraday High School, for example. And Faraday High School is a predominantly black school. If the school board had wanted to open a predominantly white school less than a mile from a predominantly black school, we would submit that the district court never would have allowed that to happen. Because it's adverse to desegregation, and, I mean, it's just adverse to the principles of desegregation to have a near one race white school less than a mile from a racially identifiable black school that the school board is working to resolve those issues with. Do you believe Delta is discriminatory? I think the testimony of Mr. Craig Jackson calls that into question. Well, then why not just seek a district court finding? It would seem to me that if you get the finding of discrimination that you seem to think you can get, then you avoid the parents involved problem altogether. The problem here is you haven't even bothered to get that finding. Well, I would submit, Your Honor, again, that I would submit that parents involved is a very different question dealing with post-unitary issues, where here this is a new public school trying to enter into a parish with ongoing desegregation obligations. If we were to look at the equivalent of splinter districts, this court has not hesitated in the history of desegregation to look at splinter districts and how they affect ongoing desegregation efforts and has said— I apologize for interrupting, but I know your time is limited. I want to address the waiver issue. Do you acknowledge that they have moved to modify the consent decree to remove— They did move—yes, Your Honor, they did move for that. But I would say that the school board's motion for further relief was filed on June 6, 2014, less than a year after Delta began operating. The court denied it. The court denied it because— It was a little late and not fully lawyered, but it was denied and it was appealed from. Judge Drell's order was appealed from, and I do believe that it effectively denied that motion. He denied it without hearing, and the school board and the Department of Justice didn't have an opportunity to brief that issue because it was filed three days before the hearing, and Judge Drell acknowledged at the hearing that it was highly prejudicial to file that motion three days before a hearing on the board's motion for further relief. So the parties didn't have an opportunity to brief that motion. But I would submit that that argument that is an intradistrict remedy is essentially the same argument that they made on appeal, that we would submit that whether subject to waiver for the prejudice and the timing or judicial estoppel because they intervened in this case and they took the position that they were subject to the district court's orders and voluntarily entered into a consent order, and the district court agreed with that position. You're not saying that once you enter a consent order, you're not allowed to later move to modify unitary status? Absolutely not, Your Honor. I mean, that is the principle of unitary status, is modifying the injunction to be released from Federal court supervision. Would you object to that? Your Honor? Would you object to that? We would object insofar as Delta is trying to relieve themselves of their obligations of the consent order. And it was four years after the consent order was entered into, after they repeatedly violated the consent order, that they asked to be relieved from those obligations. And Judge Durrell recognized that from the word go, they were violating it. They were rapidly advancing their own agenda. So we would object insofar as they were relieved of any of their obligations, Your Honor. Are they going to be required to provide transportation? I believe under State law, and Mr. Higgins can correct me, but as of the next school year, it is a requirement under State law that they provide transportation. And it is my understanding that they are currently trying to find a provider for transportation for next school year. And we would— Are you in September or 2019? This coming school year in August for 2018-2019, it's a requirement of State law, Your Honor. And we would also submit that having transportation would benefit low-income families and would probably help those families in the Faraday area who would like to go to the charter school but are unable to get there for various reasons. Because State law, I believe, will only require that they provide transportation to students in Concordia Parish. So if a student in Tensaw, which is just north, wanted to go to the charter school, they wouldn't be required to provide transportation for them. What if it's not only the black students that want transportation? What if it's the white students, which is going to skew their demographics match even worse? I believe that they have an obligation to provide transportation on a non-discriminatory basis, Your Honor, regardless of the race of the students. And we would encourage them to move forward with those obligations. What noncompliance do you think was most egregious? And I'm specifically interested in, separate from any issue of discriminatory intent, what they didn't give the district judge that they were required to give the district judge. I see I have about 30 seconds, Your Honor, and I'll try to answer it in that time. The three major violations they had was the enrollment provision. The parties agreed to an initial enrollment of 223 or so. They started with 323 and ended up with 500. We would submit that's a major violation of the order. The racial demographics, they consistently fell more than 30 percentage points out of the 10% requirement. And on the last one, Your Honor, if I may. You can continue to answer. On the last point, was it that they had to stay within 10% or was it that they had to analyze it and propose how they were going to resolve it? We submit, Your Honor, that the consent order stated that they would reflect the racial demographics of the Concordia Parish School Board. And if they didn't fall within 10 percentage points, they were required to submit an analysis of why they didn't fall within that requirement. And even then, on several occasions, they never submitted that analysis. And if I may very quickly, the third violation, Your Honor, was that they also agreed not to have an impact on the school board's obligations. Over 375 students who were predominantly white transferred from the school board. And the school board is relatively small with about 3,500 kids. So that's a significant impact. They recruited unapologetically, according to Mr. Fred Jackson, 16 teachers away from the school. And over a four-year period, it was uncontested that the school board lost approximately $12 million in MFP funding. And those are our three issues, Your Honor. And thank you for your time, and we pray that you affirm the district court's judgment. Good morning, Your Honors, and may it please the Court. John Gore on behalf of the United States. The Court should affirm because Delta has waived its primary argument on appeal. Throughout the proceedings below, Delta repeatedly agreed that it was subject to the district court's remedial authority in this case. Do you agree they moved to modify the consent decree? I do, Your Honor. But that motion did not include an argument or a claim that the district court lacked authority to enter remedial order. Instead, that was a motion for partial relief. It specifically challenged the racial balancing provisions. It challenged one provision of the order as being overbroad. What it didn't do is raise the challenge that they're now raising. It didn't say that the order was an improper interdistrict remedy. It didn't say that the district court lacked jurisdiction or lacked remedial authority in total. Look no further than the title of their motion. It was a motion for partial relief. It wasn't a motion for total relief, which is what they're asking for. Right. They're not asking to they're required under Louisiana law to be subject to the court, but they were challenging, they cited parents involved, for example, to challenge the race, presumably the race balancing provisions. Yes. That is correct. May I ask, you're the only plaintiff in the case. Correct. Do you all agree that if this provision were subject to parents involved, that it's pretty hard for you guys to get around parents involved? We agree that it would be subject to strict scrutiny, of course. But let me give a little bit more color on the provision as it stands in this case, which is an ongoing desegregation order. There is the racial balance requirement, and then as Judge Higginson pointed out, if Delta comes more than 10 percent below that requirement, it's required to do an analysis and make proposals for steps it will take to improve its balance. Of course, Rule 60 is always available. If for some reason it's impossible to get to that level, Delta can bring forth evidence to the court and make a 60B motion to try to get out from under it. The problem with the motion that it filed for partial relief is that it was untimely. It was filed on a Friday before a Monday hearing. So it was a surprise motion with a surprise expert and a surprise analysis. And so once we get further down the road and Delta has had an opportunity to meet its requirements and its obligations under the consent order, we can look at it at that point and see if there are other steps that are appropriate on that record. Or alternatively, I assume you agree, it sounds like you agree, that they can also move in a timely fashion to escape the provisions altogether on the ground that they were never found to be discriminatory. We don't actually agree with that piece because we don't think there is a requirement that they had to be found to be discriminatory in order to be subject to the district court's remedial authority in this case. For the same reason the school board just laid out, this is analogous to a Splinter District case. In fact, counsel this morning said that Delta is a single-site school district. Well, this Court and the Supreme Court have been very clear that in a Splinter District situation, which arises when a State actor, it doesn't matter if it's the school board or the State or a group of parents trying to organize a new school district or school under State or local law, that it's the proponents of the new school and school district that bear a heavy burden to show that their operation of the new school won't undermine the ongoing desegregation efforts in the area covered by a desegregation decree. There's not a requirement that any party show that there was discriminatory intent by the school, the Splinter District or the Splinter School. Let me give you some case sites to drive that point home. The first, of course, is the Wright case from the Supreme Court that's at 407 U.S. 451. You then have the Scotland Nett case, which is 407 U.S. 484. Both of those cases, coincidentally, are cited in Milliken v. Bradley. So the Supreme Court recognized that those cases stand for a proposition that's independent of Milliken. Perhaps the best case for our purposes is a Fifth Circuit case called Ross, 559 F. 2nd, 937. And that's a case to your earlier question, Judge Ho, where the Splinter District was opposed by the existing district. It was the Houston Independent School District was under a desegregation decree. And some parents wanted to create a new district in that geographic area. And that went up to the Fifth Circuit. And this Court held that the proponents of the new Splinter District bore a heavy burden to show that their operation of public schools in the geography covered by an ongoing desegregation order would not undermine the ongoing desegregation efforts of the school district. And there was no requirement that anybody show that those parents were acting with discriminatory intent or that the State was acting with discriminatory intent. Roberts. That's very helpful law for me in an area that I hadn't seen as frontally presented here. If we were to get anywhere near that issue, would your position be we should wait for the banks panel to issue its decision? It certainly is pending before the banks panel, Your Honor. And obviously, whichever panel decides it first is binding on the other. And so it would be up to this Court to decide whether it wanted to. With time left, do you want to go back to the point that's presented to us in this case in the briefs? And I guess I'm most interested in any supporting authority for Judge Drell's authority to require permission of other school boards. Sure. And let me just add one more case while I'm on a roll, and that would be the Rapides Parish case from this en banc court, 173 F. 3rd 944. We didn't raise any of this because the jurisdictional question wasn't raised until the reply brief, which is why I provide those sites for the court today. Yes, in terms of Judge Drell's remedial authority, again, under the Splinter District precedents from the Supreme Court and this Court, his order merely reflects a truism for a State actor, a public school, whether it's formed by a school board or parents or by State law, to operate in an area that's covered by an ongoing desegregation decree, it has an affirmative obligation and a heavy burden to show that its operation is not undermining the ongoing desegregation effort. So the ongoing desegregation in the consent decree applicable here, is there – would it be as to other school boards? Certainly in any parish where they're going to operate, where any charter public school would operate, it would have the same obligation. And so what Judge Drell did is merely state a truism. Now, that just drives home another point, which is this obligation would have rested on Delta, the obligation to show that it's not undermining ongoing desegregation efforts, the kind of right, Scotland's neck, Ross obligation under the Constitution, would have applied to Delta regardless of what Louisiana State law said on the topic. If we didn't have the Louisiana State statute. Because it's all extremely helpful. Did you have another question? Just one quick question. Absolutely. Go ahead. It depends on the quick answer. Do you agree with Concordia's counsel that no Federal appellate court has grappled with these issues in terms of desegregation orders in charter schools? Specifically with respect to Louisiana charter schools, that's correct. I'm just reading their brief. It appears that no Federal appellate court has ruled on the issue, basically the issues presented here, charter schools violating consent orders issued by a desegregation district court. I believe that that's correct. But as I've laid out, there are a number of scenarios in the Supreme Court and in this circuit court and other circuits that have dealt with analogous circumstances, which is creation of a splinter district or splinter school. You're borrowing from that. And that's exactly Delta's theory here, that it's a splinter district and it's operating in geography covered by an ongoing desegregation order. That's why it's different than Milliken v. Bradley, as the Supreme Court itself recognized in Milliken by citing Wright and Scotland's neck, that the Supreme Court respects the geographic boundaries of the school district. And so where desegregation is ongoing, that's where the obligation attaches. Thank you. Excellent. Thank you. Could you add two minutes to counsel's time? Thank you. The first issue I'd like to address in reply is that Delta Charter School should not be considered a splinter district. While it does have a physical location, or at least our campus has a physical location within Concordia Parish, again, it covers the entire state. If this were to be considered a splinter district, then every district from which students attend Delta Charter School could potentially also claim that it is a splinter district from those particular districts. Who lives the furthest? I know that 20% of our student body comes from other parishes. I believe there are four parishes from which students are currently attending the school, but technically speaking, anyone from within the state could choose to make the trip to Delta Charter School and attend. What percentage of your student body comes from a non-desegregation area? I'm not sure that we have those numbers in the record. I would also argue that in addition to this not being a splinter district, or certainly a beast that is distinguishable from a splinter district, I would agree that parents involved is a controlling case here. Delta has never been found to have acted in an unconstitutionally discriminatory manner. The fact that there are quotas, in essence, established for what that student body should look like definitely runs into that parents involved problem. In order to clarify one point that was raised by Mr. Blanchard, I would say that while Delta does have some individuals who were once affiliated with a segregation academy who were on that initial board, other than that, there's no connection between the entities. They are two completely separate legal entities. They are funded. They are in the same building, correct. It was one vacant building available in the parish, and it was available at the best price possible for the school. I'm sure that had there been a better facility available at a better price, they would have preferred to be in that location. Is that in the record, that they weren't targeting those buildings? They just took the best price? I would have to double-check. That would be in the initial pleadings, but I'm not sure that any of the pleadings got into the intent of the location. Mr. Blanchard was correct concerning transportation. That is a new legal requirement that only comes into effect for the 2018-2019 school year for type 2 charter schools, and Delta is presently arranging to have transportation. While they're not obligated under state law to provide transportation for out-of-parish students, they are intending to create a system where there would be centralized drop-off points for those students. Concerning the quote-unquote major violations, I would state that Delta's demographics simply reflect that this is a school of choice. The underlying record does show that Delta has engaged in student recruitment and has attempted to recruit African-American students. But at the end of the day, if parents decide not to come to that school, Delta is not in a position where they can force parents to do so. By default, every child who is enrolled in Delta would otherwise be enrolled in a district school in the state of Louisiana. The parent has to make an active and conscious choice to leave the district school and come to the charter school, just as they would for attending a private school or being homeschooled or moving to another school district. Pardon me? Is there a waiting list for Delta? There is presently a waiting list. Based on the, I would say, restrictions of the student population resulting from the most recent order, Delta has not been allowed to enroll as many students as would like to attend. Because of the cap? Pardon me? Because of the cap? Yes, Your Honor, because of that cap. Delta certainly would appreciate the opportunity to enroll those students, but again, so long as the lower court ruling remains in effect, they're unable to do so. In conclusion, I would simply ask that the court focus heavily on the standing issue and consider that Delta should not have been involved in this case in the first place. And I thank you for your time. If there are any additional questions, we have about 10 seconds on the clock. Thank you. Thank you, Your Honors.